**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**13 CV 7310**

| | |
|---|---|
| FERNANDO M. SABILE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LIGHTINTHEBOX HOLDING CO., LTD., QUJI (ALAN) GUO and XHENG (RICHARD) HUE,<br><br>Defendants. | Civil Action No.:<br><br>COMPLAINT FOR VIOLATIONS OF THE SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |



Plaintiff Fernando M. Sabile ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by LightInTheBox Holding Co., Ltd. ("LightInTheBox" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of the American Depository Shares ("ADSs") of LightInTheBox between its June 6, 2013 initial public stock offering ("IPO") and August 19, 2013, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against LightInTheBox and two of its most senior executives under §§10(b) and 20(a)

of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

**JURISDICTION AND VENUE**

2.      Jurisdiction is conferred by §27 of the Exchange Act. The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§1331 and 1337, and §27 of the Exchange Act.

3.      Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as the Company's agent of service of process is headquartered in this District, the Company's ADSs traded in the form of American Depository Shares are traded on the New York Stock Exchange ("NYSE"), the underwriters who conducted the IPO of LightInTheBox's ADSs did so in this District, and the alleged misconduct was transacted in and emanated from this District.

4.      In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

5.      Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased securities of LightInTheBox during the Class Period and has been damaged thereby.

6.      Defendant LightInTheBox, organized under the laws of the Cayman Islands and headquartered in Beijing, China, is a global online retail company that sells directly to consumers

via the Internet. The Company offers products in three core categories: apparel (including wedding dresses), small accessories and gadgets, and home and garden. ADSs, representing two shares of the Company's ordinary stock, are now listed (post-IPO) on the NYSE, an efficient market, under the ticker symbol "LITB" and, as of June 21, 2013, the Company had more than 9.5 million ADSs issued and outstanding.

7.     Defendant Quji (Alan) Guo ("Guo") is, and was throughout the Class Period, LightInTheBox's Chief Executive Officer ("CEO").

8.     Defendant Xheng (Richard) Hue ("Hue") is, and was throughout the Class Period, LightInTheBox's Chief Financial Officer ("CFO").

9.     The Defendants referenced above in ¶¶7-8 are referred to herein as the "Individual Defendants." LightInTheBox and the Individual Defendants are referred to herein, collectively, as "Defendants," and according to the prospectus used to conduct the IPO of LightInTheBox ADSs, LightInTheBox and the Individual Defendants' "agent for service of process in the United States is Law Debenture Corporate Services Inc., 400 Madison Avenue, 4th Floor, New York, New York 10017."

## DEFENDANTS' FALSE AND MISLEADING CLASS PERIOD STATEMENTS

10.    The Class Period starts on June 6, 2013. On that day, following an intense, multimonth roadshow, LightInTheBox, its senior executives, assisted by investment banks Credit Suisse (USA) LLC and Stifel, Nicolaus & Company, Incorporated, which underwrote and helped the Company market the offering, completed the IPO, selling more than 9.5 million ADSs at $9.50 each and raising $90.7 million in gross proceeds for LightInTheBox and its senior executives. LightInTheBox issued and sold the first 8.3 million shares, along with another 192,368 shares sold as part of the underwriters' overallotment. Defendant Guo and other

3

LightInTheBox directors and executives sold another 1,052,632 shares as part of the underwriters' overallotment.

11.     The registration statement, and the prospectus that formed part of the registration statement used to conduct the IPO (collectively, the "Registration Statement"), contained false and misleading statements, including, in pertinent part, the following:

a)     "We believe that by offering more variety and personalization *we will be able to create and capture new consumer demand*,"[1] when Defendants then knew at the time of the IPO– occurring more than two-thirds through the Company's second quarter of 2013, the period ended June 30, 2013 – that falling demand, especially in the Company's important apparel division, and particularly in wedding and prom gowns, had already caused the Company's overall second quarter 2013 sales growth to decline rather than increase, and that this had already caused a quarter-overquarter decline in apparel sales;

b)     "We have developed *a large global customer base* since we launched our first website," "[t]he number of *our customers* increased from approximately 0.5 million in 2010 to approximately 2.5 million in 2012," and "[t]he number of *our customers* was approximately 1.1 million in the three months ended March 31, 2013," when Defendants knew that most of LightInTheBox's sales to persons/entities were one-time sales, with very little repeat business;

c)     "We expect to continue to focus on the growth in sales of apparel and expect that sales of apparel will continue to contribute significantly to our total net revenues in the near future," when Defendants knew that demand for LightInTheBox's wedding and prom

---

[1] All emphasis in bold and italics is added, unless otherwise noted.

dresses had already fallen in the second quarter of 2013, driving down sales revenues in the Company's apparel division and decreasing its overall sales growth;

d)      *"We expect our net revenues to grow in the future* as we continue to introduce new products and deepen our penetration of various geographic markets around the world" and "expand our customer base and increase sales to each customer to *drive our growth*," when Defendants knew demand for LightInTheBox's products had already fallen in the second quarter of 2013, driving down sales revenues; and

e)      "[W]e expect our selling and marketing expenses as a percentage of our net revenues *to continue to decrease* in the long term as we achieve economies of scale and utilize our selling and marketing channels more efficiently," and "[w]e expect our general and administrative expenses as a percentage of our net revenues *to decrease* in the future as we achieve economies of scale," when Defendants knew that LightInTheBox's costs had already grown disproportionately compared to sales growth in the second quarter of 2013, ultimately reducing profits/increasing losses in the second quarter of 2013.

12.    As would later be reported by *Barrons* on August 20, 2013, during the IPO roadshow, Defendants also "gave a 64% revenue growth target in 2013."

13.    The price of the Company's ADSs spiked on Defendants' strong statements in the Registration Statement and in the multi-week roadshow used to conduct the IPO, increasing approximately 30% above the IPO price in the first day of open market trading, and closing at $11.61 per share on June 6, 2013, on unusually high trading volume of more than 8.8 million shares trading. As the *Wall Street Journal's Money Beat* reported that day, in pertinent part, in a report entitled "First Chinese IPO of 2013 Delivers Decent Pop":

5

LightInTheBox — the first Chinese company to list in the U.S. this year, and also the first online retailer — has made a solid public-market debut, jumping 17.5% in its first trade on the New York Stock Exchange.

The stock is being closely watched for signs that U.S. investors are ready to buy Chinese companies again, and whether U.S. banks would be wise to bring more of them (Credit Suisse and Stifel Financial are backing LightInTheBox). Early indications are positive, and if that impression holds up, other potential listers are waiting in the wings.

The Beijing-based company, which sells inexpensive Chinese-made goods like fishing rods and wedding dresses to customers mostly in other countries, often with free shipping, had priced its IPO at $9.50, the middle of its projected range. It raised $79 million and marked its initial stock-market valuation at $465 million.

The debut was the end of a long journey, both literal and figurative, according to cofounder and chief executive Alan Guo, a former Google China executive. The company actually first filed confidentially, as foreign filers for U.S. listings have long been able to do, back in 2011, he said. Regulatory filings show that the company even began with a different lead investment bank.

*When it finally launched its IPO last week, Mr. Guo said he and his team traveled to London and several U.S. cities over the course of two weeks — longer than the typical one-week roadshow. Mr. Guo said that involved many individual meetings.*

*"A lot of one-on-one, face-to-face meetings gave us the chance to clarify questions they may have with the company," he said. Part of what was discussed was the company's governance practices and accounting procedures — which has been a problem for some Chinese firms in the past.*

"We do get questions around corporate governance. *As a publicly traded company, we need to prove to investors with our performance,* and we also need to be very strict and keep on improving on all aspects of corporate governance," he said. *"We need to keep open and transparent communications channels with investors."*

If that initial pop were to hold up – the stock has traded as high as $12.50, but as low as $11.09 this morning – it would beat the average U.S. listing…

* * *

6

The market for U.S. listings of Chinese stocks collapsed last year amidst a host of concerns, including accounting and governance practices, growth in China, and a potential bubble among growth-starved U.S. investors.

Mr. Guo, for one, believed that his experience with investors suggested the market was ready again for more Chinese companies, at least in the tech and internet space.

*"In the long run, China, with a lot of innovative, entrepreneurial internet companies. . . will be a good match to the U.S. public stock markets that understand the internet as an industry," he said.*

As for other online retail companies looking to list, **Mr. Guo said: "I tend to echo [Amazon CEO] Jeff Bezos, that this is only day one for e-commerce. There's still going to be a journey as a lot more consumers come to buy more products online, and buy more frequently online."**

14.      On July 22, 2013, IPO underwriter Credit Suisse issued a research report initiating coverage and setting a $16.50 price target on the Company's ADSs, saying the ADSs, then trading at approximately the target price, were "fairly valued" and that, based on Defendants' statements (and individual interviews with the Company's management), Credit Suisse then "expect[ed] LITB's non- GAAP net earnings to turn positive to US$14.7 mn in 2013E and grow 132% to US$34.1 mn in 2014E." Credit Suisse also lauded LightInTheBox's business acumen, high margin and profitability, again citing its conversations with LightInTheBox management:

Management sees LITB as a company which connects the small-size (or even minisize) manufacturers in China with global customers overseas. Therefore, it has strong bargaining power when negotiating with its suppliers. At the same time, it has a price advantage compared with the offline market overseas because it sources from China and sells mainly to overseas customers. It retails a wide variety of products including customized apparel, home and garden products, accessories and gadgets, electronics, etc.

                                     * * *

We interviewed LITB's key management one by one and have reached a conclusion that they have a clear understanding of where they are and where they want to be in a few years' time. We believe they are committed to the business and that was a main driver that the company

could deliver solid business execution. Their past experience in related industries and positions has helped.

\* \* \*

We expect LITB to achieve 63% YoY revenue growth in 2013E and 57% in 2014E. Our revenue forecast is mainly driven by the increase in the number of orders.

As shown in Figure 38, we expect the company's total orders to rise 95% in 2013E to 6.3 mn, or on average, 17,157 packages of delivery per day. In 2014E, we estimate another 55% YoY rise in the total number of orders to 9.7 mn, or 26,571 packages of delivery on an average daily basis.



Figure 38: No. of orders

Source: Company data, Credit Suisse estimates



Figure 39: Quarterly order estimates

Source: Company data, Credit Suisse estimates

15.    The Credit Suisse report also stated it "expect[ed] admin expenses to come down gradually alongside improving operating leverage and economy of scale in the next few years, as shown in Figure 48," thus increasing its profit estimates for LightInTheBox:



Figure 46: **Fulfilment expenses forecast**

Source: Company data, Credit Suisse estimates



Figure 47: **Sales and marketing expenses forecast**

Source: Company data, Credit Suisse estimates



Figure 48: **Admin expenses forecast**

Source: Company data, Credit Suisse estimates



Figure 49: **Quarterly non-GAAP net profit estimates**

Source: Company data, Credit Suisse estimates

*We expect the company's non-GAAP operating margin to improve significantly in 2013E to 5.3%,* and gradually increase in the coming few years. *We expect LITB's non-GAAP net earnings to turn positive to US$14.7 mn in 2013E* and grow 132% to US$34.1 mn in 2014E. Our forecast three-year earnings CAGR for 2014-16E is 82%. *The diluted earnings per ADS is expected to reach US$0.40 in 2013E* and US$0.69 in 2014E. It's three-year CAGR in 2014-16E is estimated to be 65%.

16.     On August 6, 2013, LightInTheBox issued a release entitled "LightInTheBox Holding Co., Ltd. Announces Reporting Date for Second Quarter 2013 Financial Results," stating the Company "plan[ned] to release its second quarter 2013 financial results on Monday, August 19, 2013 after the US stock market close."

9

17.     Based on Defendants' strong Class Period statements, and those statements being analyzed, relied upon and reiterated by the financial media and stock analysts, the Company's stock price continued spiraling, trading above $23 per share by August 14, 2013. For instance, in an August 6, 2013 report, *Investors Business Daily* noted that the Company's ADS's "were up as much as 10% intraday," emphasizing that "[t]he [C]ompany lost money in the past few years, ***but is expected to turn a profit of 36 cents a share this year.***" *Bloomberg's* report that same day noted that despite the "Bloomberg China-US Equity Index of the most traded Chinese shares in the U.S. [falling] 0.7 percent to 93.36 in New York" that day, "LightInTheBox Holding Ltd. (LITB), the first Chinese company to have an initial public offering in the U.S. this year, jumped after saying second quarter earnings will be released Aug. 19," noting that "[t]he average forecast of three analysts surveyed by *Bloomberg* was for adjusted earnings of 6 cents per share, compared with 2 cents in the first quarter." On August 12, 2013, stock blogger Rick Munarriz published a report entitled "Is This Online Retailer the New Amazon.com?," reiterating Defendants' strong statements that LightInTheBox's "[r]evenue [had] rose from $58.7 million in 2010 to $116.2 million in 2011, to more than $200 million last year," that "Wall Street's holding out for $325 million in net sales this year," and that "LightInTheBox is also profitable," with "Analysts see[ing] the Web-based merchants earning $0.36 a share this year and $0.68 a share come 2014."

18.     The true facts, which were known by Defendants, but concealed from the investing public during the Class Period, were as follows:

a)     LightInTheBox's sales growth had already dramatically decreased during the second quarter of 2013, the period ended June 30, 2013;

b)      LightInTheBox's costs had already grown more than its sales during the second quarter of 2013; and

c)      As a result of the foregoing, the Company was not on track to achieve the financial results Defendants had led the market to expect during the Class Period.

19.      On August 19, 2013, after the close of trading, the Company issued a press release announcing its actual second quarter 2013 financial results for the quarter that had ended June 30, 2013, *less than one month after the IPO*. Rather than the earnings of $.06 per share on revenues of $75.8 million the investment community had been led to expect based on Defendants' bullish Class Period statements, LightInTheBox reported revenues of just $72.2 million and profits (excluding items) of $.05 per share. Damaging profitability, revenues rose only 52.6% while operating costs rose 57%. The Company also forecast revenues of just $68 million to $70 million for the third quarter 2013 (ending just a little more than a month away, on September 30, 2013), whereas analysts had been led to expect $75.8 million, according to *Thomson Reuters I/B/E/S*. Conceding that demand for the Company's wedding and prom dresses in particular was much weaker during the second quarter of 2013 than Defendants had stated in the Registration Statement and during the roadshow, causing apparel sales to actually decline 5.4% in the second quarter, Defendant Guo stated during the conference call held with investors on the morning of August 20, 2013, in pertinent part, that LightInTheBox had "concluded that [it] placed too much emphasis on higher-end (apparel) and not enough focus on lower-end products that traditionally sell very well."

20.      As emphasized by *Barrons* in a report issued on August 20, 2013:

> *According to the prospectus filed at the SEC, sales at LightInTheBox grew almost 100% in the first quarter this year. In the second quarter, revenue grew at a much slower 53%. Third-quarter is expected to*

*perform even worse: Guidance translates into a mere 33-37% year-on year increase, or a 3-6% quarter-to-quarter decline.*

*Investors rightly ask: what happened?*

*A source familiar with the company tells me: during the IPO road show, LightInTheBox gave a 64% revenue growth target in 2013. Unless LightInTheBox can register a 90% year-on-year growth in the fourth quarter, it is going to miss its so-called target.*

21.    On this news, the price of LightInTheBox ADSs, which had traded as high as $23.38 per share in intraday trading during the Class Period (on August 14, 2013), plummeted *approximately 40%* from their close on August 19, 2013, to close below $12 per share on August 20, 2013, *erasing more than $100 million in market capitalization from the stock's Class Period high*.

22.    The market for LightInTheBox ADSs was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, LightInTheBox ADSs traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired LightInTheBox ADSs relying upon the integrity of the market price of LightInTheBox ADSs and market information relating to LightInTheBox, and have been damaged thereby.

23.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of LightInTheBox ADSs, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

24.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about LightInTheBox's business, prospects, and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of LightInTheBox and its business, prospects, and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing LightInTheBox ADSs at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of LightInTheBox ADSs was removed and the price of LightInTheBox ADSs declined dramatically, causing losses to Plaintiff and the other members of the Class.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired LightInTheBox securities during the Class Period (the "Class"); and were damaged thereby. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

26.   The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, LightInTheBox securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by LightInTheBox or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.   Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

28.   Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

29.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of LightInTheBox;

- whether the Individual Defendants caused LightInTheBox to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

14

- whether the prices of LightInTheBox securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

30.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

31.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- LightInTheBox securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold LightInTheBox securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

32.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

33.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

34.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

35.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of LightInTheBox securities; and (iii) cause Plaintiff and other members of the Class to purchase LightInTheBox securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

36.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to

16

influence the market for LightInTheBox securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about LightInTheBox's finances and business prospects.

37.     By virtue of their positions at LightInTheBox, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

38.     Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of LightInTheBox, the Individual Defendants had knowledge of the details of LightInTheBox internal affairs.

39.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of LightInTheBox. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to LightInTheBox's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and

public statements, the market price of LightInTheBox securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning LightInTheBox's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased LightInTheBox securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

40. During the Class Period, LightInTheBox securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of LightInTheBox securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of LightInTheBox securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of LightInTheBox securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

41. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

42. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases

and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

43.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44.     During the Class Period, the Individual Defendants participated in the operation and management of LightInTheBox, and conducted and participated, directly and indirectly, in the conduct of LightInTheBox's business affairs.  Because of their senior positions, they knew the adverse non-public information about LightInTheBox's misstatement of income and expenses and false financial statements.

45.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to LightInTheBox's financial condition and results of operations, and to correct promptly any public statements issued by LightInTheBox which had become materially false or misleading.

46.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which LightInTheBox disseminated in the marketplace during the Class Period concerning LightInTheBox's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause LightInTheBox to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of LightInTheBox within the meaning of Section 20(a) of the Exchange

Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of LightInTheBox securities.

47.     Each of the Individual Defendants, therefore, acted as a controlling person of LightInTheBox. By reason of their senior management positions and/or being directors of LightInTheBox, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, LightInTheBox to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of LightInTheBox and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

48.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by LightInTheBox.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  October 16, 2013

POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP

Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
jalieberman@pomlaw.com
lfportnoy@pomlaw.com

POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

### CERTIFICATION PURSUANT
### TO FEDERAL SECURITIES LAWS

1.   I,   FERNANDO M. SABILE   , make this declaration pursuant to Section

27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange

Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against LightInTheBox Holding Co., Ltd. ("LightInTheBox" or the

"Company"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire LightInTheBox securities at the direction of plaintiffs counsel or in

order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or

acquired LightInTheBox securities during the class period, including providing testimony at deposition and

trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this

action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in

LightInTheBox securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not

sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set

forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses

directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___10/14/2013_____
                  **(Date)**

_____
                  **(Signature)**

FERNANDO M. SABILE
_____
                  **(Type or Print Name)**

SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 2013-08-15 | PURCHASE | 1,000 | 20.01 |
| 2013-08-08 | PURCHASE | 1,000 | 18.51941 |
| 2013-08-08 | PURCHASE | 1,000 | 18.56936 |
| 2013-08-08 | PURCHASE | 1,000 | 18.60937 |
| 2013-08-08 | PURCHASE | 1,000 | 18.60936 |
| 2013-08-08 | PURCHASE | 1,000 | 18.58937 |
| 2013-08-08 | PURCHASE | 1,000 | 18.58936 |
| 2013-08-08 | PURCHASE | 1,000 | 18.65936 |
| 2013-08-08 | PURCHASE | 1,000 | 18.57936 |
| 2013-09-18 | SELL | 1,000 | 12.15042 |
| 2013-09-18 | SELL | 1,000 | 12.18042 |
| 2013-09-18 | SELL | 1,000 | 12.14042 |
| 2013-09-18 | SELL | 1,000 | 12.16042 |
| 2013-09-18 | SELL | 1,000 | 12.17042 |
| 2013-09-18 | SELL | 1,000 | 12.19042 |
| 2013-09-18 | SELL | 1,000 | 12.20042 |
| 2013-09-18 | SELL | 1,000 | 12.21035 |
| 2013-09-18 | SELL | 1,000 | 12.1750 |
| — | — | — | — |
| — | — | — | — |
| — | — | — | — |
| — | — | — | — |